**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DYSHAWN MOSS,

    Defendant.

Criminal Action No. 19-701 (MAS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon four pre-trial motions by Defendant Dyshawn Moss ("Defendant"): (1) Motion for Disclosure of the identity of the United States of America's (the "Government") confidential source (ECF No. 36); (2) Motion to Suppress all evidence seized in connection with the Government's GPS vehicle tracking search warrants (ECF No. 38); (3) Motion to Suppress all evidence seized in connection with the Government's cell phone wiretap search warrant (ECF No. 40); and (4) Motion for a Bill of Particulars (ECF No. 42). The Government opposed the motions. (ECF Nos. 43, 47.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1.[1] For the reasons set forth herein, Defendant's pre-trial Motions (ECF Nos. 36, 38, 40, 42) are denied.

## I. BACKGROUND

On May 24, 2019, Defendant was charged in a criminal complaint in the District of New Jersey with conspiracy to distribute and possess with intent to distribute fentanyl, cocaine, and

---

[1] Local Civil Rule 78.1 is applicable to criminal cases in the District of New Jersey. *See* L. Civ. R. 1.1.

heroin in violation of 21 U.S.C. § 846. (Crim. Compl., Mag. No. 19-3730 (MF), ECF No. 1.) That same day, Defendant was arrested outside of his apartment in Manchester, New Jersey. (*See* Def.'s Statement Suppression Moving Br. *2[2] ("Statement Br."), ECF No. 37; Gov't's Opp'n Br. 2, ECF No. 43.) According to the Government,

> [a]t that time, the [Government] agents verbally advised Defendant of his *Miranda* rights. Defendant waived those rights and agreed to speak with the agents. Defendant was then asked if he would consent to having his residence searched. Defendant stated that he would consent to the search and then signed a "Consent to Search" form .... Defendant then pointed to a specific key on his key chain, stating that that key would open the door to his residence. Defendant told law enforcement that he lived alone and that his residence was currently unoccupied.[3]

(Gov't's Opp'n Br. 2; *see also* Statement Br. *2.) "A search of Defendant's residence yielded over [one] kilogram of fentanyl, over 400 grams of heroin, over [two] kilograms of cocaine, a firearm, and approximately $175,000 in U.S. currency." (Gov't's Opp'n Br. 2.) On September 30, 2019, a federal grand jury returned a five-count Indictment charging Defendant with possession with intent to distribute fentanyl, cocaine, and heroin; possession of a firearm by a convicted felon; and possession of a firearm in furtherance of a drug trafficking crime. (ECF No. 17.)

Between May 19, 2020 and May 29, 2020, Defendant filed the instant Motions. (*See* ECF Nos. 36, 38, 40, 42.) Defendant seeks: (1) the disclosure of the identity of a confidential source relied upon by the Government in its investigation of Defendant, (ECF No. 36); (2) the suppression of evidence seized in connection with allegedly unlawful search warrants and GPS tracking devices on Defendant's vehicle, (ECF No. 38); (3) the suppression of evidence seized in

---

[2] Page numbers preceded by an asterisk refer to the page number of the ECF header.

[3] Defendant contends the Government obtained neither a valid consent to search his apartment, nor a valid waiver of his *Miranda* rights. (*See generally* Statement Br.; Def.'s Apartment Suppression Moving Br., ECF No. 39.) The Court will address these arguments and the associated Motions to Suppress following an evidentiary hearing.

connection with an allegedly unlawful cell phone search warrant and wiretap, (ECF No. 40); and (4) a bill of particulars, (ECF No. 42).

## II. MOTION FOR DISCLOSURE OF THE CONFIDENTIAL SOURCE

During its investigation into Defendant's activities, the Government directed "an individual with a history of credibility and reliability [to] purchase[] narcotics from [Defendant]." (Crim. Compl. 4) In addition to the assistance provided by the confidential source, the Government relied upon "physical surveillance, court-authorized location information, controlled purchases of narcotics, and lawfully intercepted communications." (*Id.*) Defendant now moves for the disclosure of the confidential source's identity because: (1) "he/she was the main active participant throughout law enforcement's investigation of [the] case"; (2) "disclosure of the informant is essential for the preparation of [Defendant's] case"; and (3) "said disclosure assures a fair determination of the issues [of the] case." (Def.'s Disclosure Moving Br. 3 ("Discl. Br."), ECF No. 36.) In opposition, the Government argues that (1) the evidence seized from Defendant's residence was "obtained pursuant to a consent search[,]" not the confidential source's assistance, and (2) "there is a legitimate safety risk to the informant if his/her identity is disclosed to the defense." (Gov't's Opp'n Br. 5 (citing *United States v. Day*, 384 F.2d 464, 469 (3d Cir. 1967) (McLaughlin, J., concurring) ("[I]f disclosure on a mere supposition is required in every instance, the interests of law enforcement in combatting [crime] will be detrimentally affected by the emasculation of its only effective weapon—the informer.")).)

"[T]he Supreme Court [has] recognized that there is a qualified privilege possessed by the Government to refuse to disclose the identity of a confidential informant from whom it has received information about alleged criminal activity." *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983) (citing *Roviaro v. United States*, 353 U.S. 53, 62 (1957)). "While there is no fixed rule as to when disclosure is required, . . . once a defendant sets forth a specific need for disclosure

3

the court should balance 'the public interest in protecting the flow of information against the individual's right to prepare his defense.'" *United States v. Jiles*, 658 F.2d 194, 196 (3d Cir. 1981) (quoting *Roviaro*, 353 U.S. at 62) (citation omitted). "The mere speculation that an eyewitness may have some evidence helpful to [the] defendant's case is not sufficient to show the specific need required by *Roviaro*." *Id.* at 197 (citations omitted).

"Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62. For example, in *Roviaro* "a single defendant was convicted of a single instance of selling and transporting heroin." *United States v. Zolp*, 659 F. Supp. 692, 705 (D.N.J. 1987); *see Roviaro*, 353 U.S. at 55. A government informant purchased the heroin. *Roviaro*, 353 U.S. at 55. The Supreme Court found that the district court committed reversible error when it permitted the government to refuse disclosure of the informant's identity, noting that "[t]his is a case where the [g]overnment's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses." *Id.* at 64.

Here, however, the Government maintains that "[a]*ll* of the aforementioned charges relate to the items recovered from Defendant's residence, specifically, the narcotics and the firearm." (Gov't's Opp'n Br. 3.) Even assuming arguendo that the confidential source played, as Defendant suggests, an active role in the Government's initial, pre-residence search investigation, revealing his or her identity to Defendant is unlikely to provide the type of "relevant and helpful" evidence envisioned by informant disclosure. *Roviaro*, 353 U.S. at 60–61. Moreover, while Defendant claims the confidential source was "used throughout the criminal investigation of this case," (Discl. Br. 5–6), he fails to address how the source relates to the seemingly seminal May 24, 2019 search

4

of Defendant's residence, (*see generally id.*). The Court, therefore, finds that Defendant has failed to meet his burden of demonstrating a specific need for disclosure and, accordingly, denies the Motion for Disclosure.

### III. MOTION TO SUPPRESS GPS WARRANT EVIDENCE

Next, Defendant moves to suppress evidence seized in connection with two GPS search warrants obtained by the Government to monitor Defendant's vehicle (the "GPS Motion"). According to Defendant, the initial March 19, 2019 search warrant lacked probable cause for the following reasons: (1) the preceding allegations and affidavit "were based on the unreliable and uncorroborated allegations of a confidential source that [had] only been used for a 'few months' when the [w]arrant had been issued"; (2) the affidavit "fails to provide allegations supporting a reasonable basis for installing a GPS tracking device to [Defendant's] vehicle"; (3) the alleged interactions between the confidential source and Defendant took place in the confidential source's vehicle, not Defendant's; (4) the Government "failed to establish that any of its members [had] observed [Defendant] engage in suspected criminal activity inside of his vehicle"; (5) the affidavit only addressed Defendant's criminal history, which had "no relevance to an establishment of probable cause"; and (6) the affidavit failed to establish the confidential source's reliability. (Def.'s GPS Mot. Moving Br. 6–7, ECF No. 38.) Furthermore, Defendant asserts that the Government has failed to turn over discovery related to the initial GPS tracking device. (*Id.* at 8.) Defendant contends that such information "is pertinent to this Court's decision in deciding whether there was probable cause to support the subsequent [w]arrant reinstalling the GPS [d]evice" on May 2, 2019. (*Id.*; *see also id.* at 3.) In opposition, the Government maintains that the search warrants were based upon probable cause and lawfully obtained. (Gov't's Opp'n Br. 13.) The Government, however, asserts it is only seeking to introduce evidence associated with the May 24, 2019 search of

Defendant's residence and, therefore, "is not seeking to introduce any evidence obtained from" the two vehicle search warrants. (*Id.*)

Although a district court should not "simply rubber stamp a magistrate[ judge's] conclusions" regarding probable cause, such determinations "'should be paid great deference by reviewing courts.'" *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)); *see also United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) ("[A] reviewing court may not conduct a de novo review" and must "exercise only a deferential review" of the magistrate judge's initial determination of probable cause). "As such, in order to uphold the warrant, this Court need only find a minimal 'substantial basis' for concluding that probable cause existed." *United States v. Brown*, No. 06-867, 2008 WL 5484121, at *1 (D.N.J. Dec. 18, 2008) (citing *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993)); *see also Whitner*, 219 F.3d at 296. To determine whether a "substantial basis" exists, the Third Circuit has stated the following:

> In determining whether a "substantial basis" exists for the magistrate judge's decision we must keep in mind the judge's task in authorizing search warrants. The task of the issuing magistrate [judge] is [to] make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before [her] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. In *Gates*, the Supreme Court stated that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner. . . . Furthermore, [t]he issuing judge or magistrate [judge] may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.

*Whitner*, 219 F.3d at 296 (citations omitted). Finally, "[w]hen reviewing an application, courts must also bear in mind that search warrants are directed, not at persons, but at property where there

is probable cause to believe that instrumentalities or evidence of crime will be found." *Tehfe*, 722 F.2d at 1117. A search warrant, therefore, "need not present information that would justify the arrest of the individual in possession of or in control of the property." *Id.* at 1118.

The Government's affidavit in support of the March 19, 2019 search warrant detailed a multi-month investigation into Defendant's alleged narcotics operation that "included, but [was] not . . . limited to, physical surveillance, analysis of phone records, and interviews with witnesses and law enforcement sources." (GPS Aff. ¶ 7, Ex. B to Def.'s GPS Mot., ECF No. 38-3; *see generally id.* ¶¶ 8–16.) Moreover, the Government's affidavit described two occurrences in which Defendant allegedly used the target vehicle to meet the Government's confidential source and conduct narcotics transactions. (*Id.* ¶¶ 11–12, 15–16.) The Government also maintained that it had been working with the confidential source for "the past few months" to "gain information about various narcotics traffickers operating in and around the Monmouth County area in New Jersey." (*Id.* ¶ 8.) According to the Government, it believed the confidential source's information was reliable because he or she had "previously worked as a source with law enforcement and law enforcement ha[d] been able to corroborate the [source's] information through other investigative means." (*Id.* ¶ 8 n.4.) Finally, the Government's affiant described both his experience investigating unlawful narcotics distribution and his conclusions regarding Defendant's alleged criminal activity. (*Id.* ¶¶ 3, 17–18 ("Based on the investigation to date, and on law enforcement's training and experience, I believe that [Defendant] is using the Target Vehicle to facilitate narcotics-related activities, specifically to transport narcotics and narcotics-trafficking proceeds.").)

Based on this information, the Court finds a "substantial basis" exists for the magistrate judge's finding of probable cause. As stated above, this limited analysis requires only that "the issuing magistrate[ judge's] determination was made consistent with the minimal substantial basis standard." *Conley*, 4 F.3d at 1205; *see also id.* at 1206 ("The supporting affidavit must be read in

7

its entirety and in a common sense and nontechnical manner."). Here, the magistrate judge relied upon (1) the affiant's experience and conclusions regarding Defendant's unlawful activities, (2) a confidential source who had previously worked with the Government and whose information had been corroborated through other means, and (3) two instances in which Defendant allegedly used the target vehicle to meet the confidential source and conduct narcotics transactions. Given the deference afforded to the magistrate judge's determinations, and because a commonsense reading of the affidavit in its entirety could reasonably lead to a determination that Defendant and his vehicle were involved in narcotics trafficking, the Court finds that the magistrate judge had a substantial basis for concluding probable cause existed. *See, e.g., United States v. Richardson*, No. 15-176, 2016 WL 223705, at *6 (D.N.J. Jan. 19, 2016) (finding search warrant for defendant's vehicle was based upon probable cause, in part, because the officer "described in detail the observation of three suspected narcotics transactions, including one transaction involving [d]efendant just prior to entering the vehicle"). The Court, accordingly, denies Defendant's Motion to Suppress evidence associated with the GPS vehicle tracking search warrants.

## IV. MOTION TO SUPPRESS CELL PHONE WARRANT EVIDENCE

Defendant also seeks to suppress evidence seized in connection with a May 21, 2019 search warrant "authorizing the interception of wire and electronic communications over cellular devices alleged to be assigned to" Defendant (the "Cell Phone Motion"). (Def.'s Cell Phone Mot. Moving Br. 2, ECF No. 40.) Similar to its opposition to Defendant's GPS Motion, the Government states that, while the warrants were properly issued, it does not seek to introduce any evidence related to the cell phone warrant and related wiretaps. (Gov't's Opp'n Br. 14.) Furthermore, according to the Government, the wiretaps were terminated three days after the search warrant was authorized, as the "investigation revealed that Defendant ceased using the target cellular telephone numbers." (*Id.* (further noting that "[n]o pertinent conversations were intercepted from the wiretaps").)

Defendant first argues that the Court "should find that there was no 'substantial basis' for concluding that probable cause existed to issue" this warrant because the Government failed to "exhaust other investigative options prior to seeking the invasion of [Defendant's] privacy via cell[]phone interception." (Def.'s Cell Phone Mot. Moving Br. 8.) Specifically, Defendant asserts the Government did not (1) utilize undercover officers throughout its investigation, (2) utilize additional confidential sources or witnesses, or (3) use search warrants for public locations. (*Id.*) Defendant, however, provides no legal authority for its failure to exhaust argument and, instead, merely provides conclusory arguments. (*Id.*) Moreover, an analysis of the Government's affidavit in support of its search warrant demonstrates it adequately explained that normal investigative procedures had been attempted and either failed or were unlikely to succeed. (*See generally* Gov't's Wiretap Aff., Ex. B to Cell Phone Mot., ECF No. 40-4.)

"To obtain authorization for an interception of a wire communication, the government must show that:" (1) "there is probable cause for belief that an individual is committing, has committed[,] or is about to commit a particular offense" and (2) "there is probable cause for belief that particular communications concerning that offense will be obtained through such interception[.]" *United States v. Adams*, 759 F.2d 1099, 1114 (3d Cir. 1985) (quoting 18 U.S.C. § 2518(3)). Additionally, the government must also establish that "normal investigative procedures have been tried and have failed *or reasonably appear to be unlikely to succeed if tried or to be too dangerous.*" *United States v. Vento*, 533 F.2d 838, 848–49 (3d Cir. 1976) (emphasis added) (quoting 18 U.S.C. § 2518(3)). "There is no requirement that every investigative methodology be exhausted prior to application for a [S]ection 2518 authorization." *Id.* at 849. "Investigators are not obliged to try all theoretically possible approaches[,]" and "[i]t is sufficient that the government show that other techniques are impractical under the circumstances and that it would be unreasonable to require pursuit of those avenues of investigation." *Id.* "The

9

government must, however, fully explain to the authorizing judge the basis for such a conclusion." *Id.*

Here, the Government provided a fourteen-page subsection of its affidavit titled "Insufficiency of Alternative Investigative Techniques." (Gov't's Wiretap Aff. ¶¶ 63–90.) In that subsection, the Government asserts, *inter alia*, that: (1) additional undercover officers were "unlikely to be made aware of the full scope of the activities of" Defendant and his alleged co-conspirators, (*id.* ¶ 69); (2) the current confidential source did "not generally have the ability to get telephone numbers for other members or associates of" Defendant's alleged organization, (*id.* ¶ 71); (3) the Government was "reluctant to continue using [the current confidential source] for fear of [his or her] safety[,]" (*id.*); (4) the continued use of physical surveillance was not a reasonable alternative to intercepting communications because (a) such surveillance risked jeopardizing the investigation, (b) Defendant allegedly discussed "narcotics related activity over the telephone, which is not amenable to physical surveillance[,]" and (c) physical surveillance was unlikely to be fruitful due to the fact that the alleged transactions "occur[red] inside convenience stores and vehicles[,]" (*id.* ¶ 77); (5) geolocation information "cannot help law enforcement determine which . . . locations are visited for innocuous reasons and which are visited in connection with criminal activities[,]" (*id.* ¶ 81); (6) the telephone records and pen registers used in the investigation provided only limited information and did "not enable law enforcement to identify with certainty the persons involved in" the alleged offenses, (*id.* ¶ 84); and (8) "[a]pplications for search warrants at physical locations [were] not feasible or appropriate . . . because [they] would [have] jeopardize[d] the investigation, which [was] . . . covert[ at the time,]" (*id.* ¶ 87).

Despite Defendant's conclusory assertions that the Government did not exhaust all normal investigative procedures, the Court must take a "pragmatic approach" to this issue and view the Government's affidavit in a "practical and commonsense fashion." *Vento*, 533 F.2d at 849

10

(citations omitted). The Government sought to discover "the full scope" of Defendant's allegedly illegal activities, including (1) "the role of each member and associate" in his organization, (2) "the various methods and means used" to "import and distribute narcotics[,]" (3) the "sources of supply of" narcotics, (4) the identities of customers, and (5) storage locations. (Gov't's Wiretap Aff. ¶ 6.) As the Third Circuit stated in *Vento*, "[w]itnesses who had past experience with [Defendant] were necessarily of limited utility; prolonged physical surveillance was not possible; and search warrants would provide only a portion of the necessary information." 533 F.2d at 850. The Court, accordingly, denies Defendant's Motion to Suppress the cell phone warrant evidence on this ground.[4]

Defendant next argues that the Government's affidavit failed to sufficiently detail "the confidential source's veracity, reliability, or basis of knowledge so as to equate to a finding of probable cause for the [w]arrant at issue." (Def.'s Cell Phone Mot. Moving Br. 11; *see generally id.* at 13–17.) Defendant, however, relies on legal authority relating to a confidential source's tip or production of secondhand information. (*Id.* at 13–14, 16–17 (citing *United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991); *State v. Keyes*, 878 A.2d 772, 781 (N.J. 2005); *People v. French*, 201 Cal. App. 4th 1307, 1324 (Cal. Ct. App. 2011)).) Here, the Government does not assert it relied on its confidential source's tip or secondhand information to apply for the warrant in question. Rather, the Government maintains its confidential source was *working with* the Government to receive a more lenient sentence on a state narcotics conviction. (Gov't's Wiretap Aff. ¶ 11.) The Government also details the confidential source's communications with, and

---

[4] Defendant also argues that the Government provided only a "barebones" affidavit that "fail[ed] to specifically address why the procedures [the Government had] used were unsuccessful[.]" (Def.'s Cell Phone Mot. Moving Br. 11.) For the reasons stated above, the Court finds that the Government has adequately explained that normal investigative procedures have been attempted and failed or were unlikely to succeed. Accordingly, the Court denies Defendant's Motion to Suppress on this ground.

11

narcotics purchases from, Defendant at the behest of the Government. (*See generally id.* ¶¶ 14–26.) The Court, accordingly, rejects Defendant's argument regarding the confidential source and denies its Motion to Suppress on this ground.[5]

Finally, Defendant asserts he is entitled to a *Franks* hearing because he "has made a substantial preliminary showing that a reckless disregard for the truth and material omissions of fact have been made in the pursuit of securing the invalid [w]arrant." (Def.'s Cell Phone Mot. Moving Br. 21.) "In *Franks*, the Supreme Court determined that a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant subsequent to the ex parte issuance of the warrant." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). A defendant is entitled to a *Franks* hearing if he first "make[s] a 'substantial preliminary showing' that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause." *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 170 (1978)). Here, Defendant maintains he is entitled to a *Franks* hearing because (1) "no information was provided to support how the confidential source was reliable"; (2) the Government failed "to elaborate [on] what information, allegedly provided by the confidential source, was corroborated by independent police investigation"; (3) the Government failed "to establish why interception of wire and electronic communications . . . was necessary to secure when law enforcement engaged in a plethora of other investigative procedures"; and (4) the affidavit "contain[ed] a reckless disregard for the truth or material omission[] of fact as it relates to the statements that the Government/law enforcement

---

[5] The Court also notes that, in support of his argument, Defendant cites to the New Jersey Supreme Court, the Eighth Circuit Court of Appeals, and the California 1st District Court of Appeal. (*See* Def.'s Cell Phone Mot. Moving Br. 13–14, 16–17.) While these cases do, in part, address Supreme Court precedent, the Court does not find them persuasive or binding upon the instant federal criminal matter.

12

exercised and exhausted all normal investigative procedures." (Def.'s Cell Phone Mot. Moving Br. 19–20.) As stated previously, however, the Government was not required to provide such information, and its assertions in the affidavit were appropriate. Moreover, the Court does not find that Defendant has provided anything more than conclusory allegations that the Government's affidavit contained false statements or omissions. *See United State v. Tutis*, 167 F. Supp. 3d 683, 698 (D.N.J. 2016) (holding that under *Franks*, a substantial preliminary showing requires more than conclusory allegations that the affidavit contains false statements or omissions). Indeed, a defendant challenging the Government's affidavit under *Franks* "must specifically identify allegedly false statements or omissions in the affidavit and provide a statement of reasons supporting the argument, as well as an offer of proof or . . . a satisfactory explanation for the absence of proof." *Id.* (citations omitted). The Court, accordingly, denies Defendant's Motion to Suppress the cell phone warrant evidence on this ground.[6]

## V. MOTION FOR A BILL OF PARTICULARS

Finally, Defendant seeks a bill of particulars and requests that the Government provide: (1) "the nature of any and all statements, text messages, dispatch reports, logs, e-mails[,] and any other documentation that was relied on and prepared in support of and/or following the arrest of [Defendant]"; (2) "the nature of any and all statements, text messages, dispatch reports, logs, e-mails[,] and any other documentation upon [which] the prosecution will rely on to prove that the Government had a lawful basis to arrest [Defendant] and a lawful basis to enter and search his

---

[6] Defendant also alleges that the Government has failed to provide him with progress reports related to the warrants that were ordered by the Honorable John Michael Vasquez, U.S.D.J. (Def.'s Cell Phone Mot. Moving Br. 20–21.) According to Defendant, "[t]he opportunity to receive all of this additional discovery could take place at a [*Franks* hearing]." (*Id.* at 21.) Defendant, however, fails to demonstrate how the Government's failure to provide this information relates to the false statement protections afforded by a *Franks* hearing. To the extent that Defendant wishes to file a separate pre-trial motion to obtain this information, he may. The Court, however, will not order a *Franks* hearing for such a request.

home," apart from the "Consent to Search Form"; and (3) "duplicate video surveillance footage from the Prime Storage Unit from April 15, 2019, that the Government relied on when they obtained all of the [s]earch [w]arrants that were issued in this case[.]" (Mot. for Bill of Particulars ¶¶ 1–3, ECF No. 42-1.) Defendant asserts, in a conclusory fashion, that this information "is absolutely necessary to permit [him] to adequately prepare a defense to the charges as [c]ontained in the Indictment." (Def.'s Bill of Particulars Moving Br. *3, ECF No. 42.)

"The purpose of a bill of particulars is to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial[,] and to protect him against a second prosecution for an inadequately described offense." *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005) (citation omitted). A court should only order a bill of particulars when "an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. DePaoli*, 41 F. App'x 543, 546 (3d Cir. 2002) (citation omitted). Furthermore, although Federal Rule of Criminal Procedure 7(f), which provides for a bill of particulars, "is construed liberally, it does not permit a defendant to receive wholesale discovery of the Government's evidence." *United States v. Eisenberg*, 773 F. Supp. 662, 689 (D.N.J. 1991) (citation omitted). "[A]nd '[i]n recognition of the Government's interest in not being forced to divulge the entirety of its case prior to trial,' a court need not grant a request where it would serve merely to provide the defendant with a detailed pre-trial disclosure of the Government's evidence." *United States v. Parlavecchio*, 903 F. Supp. 788, 795 (D.N.J. 1995) (quoting *Zolp*, 659 F. Supp. at 706). Finally, "access to discovery weakens the case for a bill of particulars." *United States v. Atwell*, No. 13-0560, 2015 WL 2092687, at *5 (D.N.J. May 5, 2015) (cleaned up) (citing *Urban*, 404 F.3d at 772).

14

In the instant matter, the Government's Indictment contains (1) the date and county of Defendant's alleged violations, (2) a description of the items Defendant allegedly possessed, and (3) the federal laws which Defendant allegedly violated. (*See generally* Indictment 1–5, ECF No. 17.) Despite Defendant's assertion that more information is necessary to adequately prepare a defense, courts have denied requests for a bill of particulars for similar indictments. *See, e.g., United States v. Brown*, No. 06-867, 2008 WL 5484121, at *6 (D.N.J. Dec. 18, 2008) (holding that a firearm possession indictment providing date, location, item description, and statutory violation adequately "serve[d] to inform [d]efendant of the nature of the charges against him"); *United States v. Weingartner*, 485 F. Supp. 1167, 1184 (D.N.J. 1979) ("First, the subject indictment is not unduly vague. It alleges the approximate dates and precise firearms allegedly illegally received by [the defendant]."). Furthermore, the Government maintains—and Defendant does not contest—that it "has complied with its discovery obligations by turning over all material required under Rule 16." (Gov't's Opp'n Br. 14); *see also United States v. Caruso*, 948 F. Supp. 382, 393 (D.N.J. 1996) (denying request for a bill of particulars because "the government has represented to the court that it has provided the defendant" with discovery). Finally, the Court finds that the Government's opposition papers more than adequately apprise Defendant of the allegations and charges against him. (*See generally* Gov't's Opp'n Br.; *see also id.* at 3 ("*All* of the aforementioned charges relate to the items recovered from Defendant's residence, specifically, the narcotics and the firearm. Defendant was *not* charged, in the indictment, in connection with the narcotics or the firearm recovered from the Storage Locker where Benton was arrested on May 24, 2019."); *see also Parlavecchio*, 903 F. Supp. at 795–96 (citing the government's opposition papers and holding that it "provided further information" to the defendant's request, "appris[ed] him of its specific allegation[,]" and did "not lead to [the defendant's] inability to adequately prepare his case" (citation omitted)).

For the aforementioned reasons, and because the "granting of a bill of particulars lies within the sound discretion of the District Court[,]" *Brown*, 2008 WL 5484121, at *6 (citing *Urban*, 404 F.3d at 772), the Court denies Defendant's Motion for a Bill of Particulars.

## VI. CONCLUSION

For the reasons set forth above, Defendant's pre-trial motions (ECF Nos. 36, 38, 40, 42) are denied. The Court will enter an Order consistent with this Memorandum Opinion.[7]

s/Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

---

[7] Defendant also requests leave to file additional pre-trial motions as the need arises. (*See, e.g.*, Discl. Br. 8.) The Court grants Defendant's request.

16